## Owings & Piet *v.* Low.—June, 1826.

In an action of *assumpsit* to recover the value of a quantity of hardware, sold by P, the plaintiff, to D, the defendant—D, the defendant, offered to prove by W, that he the witness, and D and P, had with others, associated together to build several houses; that P was to furnish the necessary hardware, and was to be paid by having an interest in one of the houses when finished; and that the hardware in dispute was delivered by P to D, under this agreement.—*Held,* (on the objection of P,) that W was not a competent witness, because he had an interest in defeating the action; for in case P recovered, he would not only be liable to contribute a proportion of the verdict, but would also be responsible for a proportion of the costs.

Where the court overrule an objection to the competency of a witness, and the party making it is preparing his exception, he does not waive the benefit of it by examining the witness as to the points in issue, before the exception is signed and sealed.

D having given in evidence a written agreement between B, and himself and the said W, by which B agreed to deliver what brick might be necessary to build the said houses, and in part payment was to take one of the houses, P offered to prove by B, that at the time this agreement was made, W and D stipulated that the houses were to be finished by a particular time.—*Held,* that such evidence could not be given by P, the plaintiff, because not being a party to the agreement, he was not bound by it, and could not, therefore, avail himself of it in his favour.

APPEAL from *Baltimore* County Court.    This was an action of *assumpsit* for goods sold and delivered by the plaintiffs, (now appellants,) as co-partners, to the defendant, (the appellee.) The declaration contained two counts—*Indebitatus assumpsit,* and *quantum meruit.*    The defendant pleaded *non assumpsit,* and filed an account in bar, charging the plaintiffs with three-fourths of a house built by the defendant for them, amounting to $4,141 11, and three years ground rent for the ground on which the house stands; together with interest, the whole amounting to $5,346 47.

1. The plaintiffs at the trial proved the delivery of the goods, wares and merchandise, by them to the defendant, for which the suit was brought. The defendant then offered to prove by a certain *John Walsh*, that the plaintiffs, together with the defendant, and the witness and others, associated together to build several houses on *Franklin-street*, in the city of *Baltimore*; that the plaintiffs had agreed to furnish the hardware necessary for the houses, and for payment thereof was to have an interest of three-fourths in one of them when finished. The plaintiffs objected to *Walsh* as a witness, on the ground of his being interested; which objection the Court, [*Dorsey*, Ch. J. and *Hanson*, A. J.] overruled. The plaintiffs excepted; and while drawing the exception, and before it was signed and sealed, the plaintiffs' counsel further asked said witness, whether the houses had not much depreciated in value. To which he replied in the affirmative.

2. The defendant further offered in evidence, by a certain *Charles L. Boehme*, the following agreement between the said *Boehme* and the defendant, and *Walsh*, the witness aforesaid, signed by *Boehme*, dated the 18th of October 1818: "Whereas I, *Charles L. Boehme*, of the city of *Baltimore*, have and did, on or about the thirteenth day of April last, agree with *Henderson P. Low*, to deliver to him and to *John Walsh*, all the bricks that might be required by them for the purpose of building five warehouses and two dwelling-houses on *Franklin-street*, and one dwelling on *North-street*, at the rate of eight dollars p. thousand for good merchantable common brick, customary price for front brick, and what might be customary for extra hauling, in addition to what bricks may be wanting to complete the said houses, which I agree to deliver without delay. I hereby further agree to deliver to the said *Henderson P. Low* and *John Walsh*, or to their executors, administrators or assigns, three hundred thousand good merchantable bricks, in any part of the city that they may require the same, or any part thereof, to be delivered, at the above rate of eight dollars p. thousand, and customary prices for extra hauling; one half of the said three hundred thousand to be delivered between this time and the first of January, if required, and the residue by the first of June next, if required. In payment of the above

bricks, I hereby agree to take one of the dwelling-houses on *Franklin-street* at the actual cost thereof, subject to *annual* rent of ten dollars pr. front foot, the rent commencing on the first of October inst. and for which a lease from Messrs. *Peter & George Hoffman,* the proprietors of the ground, is to be given; the residue is to be paid as follows: One thousand dollars cash; a note at 60 days for one thousand dollars; and a note at sixty days for five hundred dollars. Should there be a balance on either side, the same to be paid when ascertained." On the back of which was the following receipt, signed by the said *Boehme.* "*Baltimore,* October 8, 1818. Rec'd. of *Henderson P. Low* and *John Walsh* five hundred dollars in cash, which, with five hundred dollars rec'd. on the 3d inst. is in full of the cash payment mentioned within. At the same time rec'd. of them, *Walsh & M'Quinn's* notes for fifteen hundred dollars, one dated the 6th inst. at 60 days, for one thousand dollars, and one dated the 10th inst. for five hundred dollars, being the notes mentioned within."

The plaintiffs then offered to prove by *Boehme,* that at the time of signing the aforesaid agreement, *Walsh* and the defendant agreed to have the houses, mentioned in the said written agreement, finished by the first day of December 1818. To which evidence the defendant objected, and the court allowed the objection. The plaintiffs excepted.

3. The defendant then proved by *Walsh* that he, the witness, and the defendant, had agreed to build several houses on *Franklin-street,* and two houses on *North-street,* in the city of *Baltimore,* on lots which they had agreed to lease of *George* and *Peter Hoffman;* that the defendant applied to the plaintiffs to take an interest in one of the houses to be erected on *Franklin-street;* and the plaintiffs thereupon agreed with the defendant to furnish all the hardware that might be wanted for said buildings about to be erected on *Franklin-street* and *North street,* and to take three-fourths of one of the houses to be built on *Franklin-street,* in payment for the hardware which they were to deliver as aforesaid; that five or six months afterwards, and after some of the hardware had been furnished by the plaintiffs, they, the said *Walsh* and the defendant, declined building

the two houses on *North-street*, and *Walsh*, with the assent of the defendant, informed *Piet*, one of the plaintiffs, that they had so declined, and that this would make no difference to the plaintiffs, as the defendant and *Walsh* would take from them as much hardware as they would have done if they had not declined building the two houses on *North-street;* that *Piet* made no objection; and that the plaintiffs afterwards continued to furnish hardware, which was used on the buildings on *Franklin-street*, and that the said buildings were finished in the month of May 1819, and that the present action was brought to recover the hardware which had been delivered to the defendant under the contract and in the manner before stated. The witness also proved, that the houses on *Franklin-street* were never divided by any particular act, nor was any house ever tendered to the plaintiffs, within his knowledge; but witness heard *Piet*, one of the plaintiffs say, that *Owings*, the other plaintiff, would take no part in the buildings. The defendant had the key of the houses, and the witness did not know that he had ever parted with it. The plaintiff then moved the court to direct the jury, that if they believe this testimony, the plaintiffs were entitled to recover; which direction the court refused to give. The plaintiffs excepted; and the verdict and judgment being against them, they appealed to this court.

The cause was argued at the last June term before BUCHANAN, Ch. J. and EARLE, MARTIN, STEPHEN, and ARCHER, J.

*Mitchell* and *R. Johnson*, for the Appellants. 1. *John Walsh* was not a competent witness, and ought not to have been admitted.

2. The evidence offered in the *second* bill of exceptions, to prove the time limited for the completion of the houses, should have been received.

3. The agreement, stated in the *third* bill of exceptions, resting only on parol evidence, was within the statute of frauds.

4. If it was not within the statute, still it was not binding on the plaintiffs, as the defendant failed to perform his part of it; and the court should, therefore, have directed the jury, that the plaintiffs were entitled to recover.

5. The account in bar ought not to have been admitted.

1. On the *first point*, they cited *Martin vs. Henrickson*, 2 *Ld. Raym.* 1007. *French vs. Backhouse*, 5 *Burr.* 2727. *Riddle vs. Moss*, 7 *Cranch*, 206. 1 *Phill. Evid.* 48, 73. *Young vs. Bairner*, 1 *Esp. Rep.* 103; and *Birt vs. Hood*, *Ibid* 20.

2. On the *second point*—*Watkins vs. Hodges & Lansdale*, 6 *Harr & Johns.* 38. *Ensign vs. Webster*, 1 *Johns. Cas.* 145. *Keating vs. Price*, *Ibid* 22. *Pleasants vs. Pemberton*, 2 *Dall. Rep.* 196. *Peake's Evid.* 83. *Morton vs. Wells*, 1 *Tyler's Rep.* 382. *The King vs. Inhabitants of Laindon*, 8 *T. R.* 379, 382. 1 *Phill. Evid.* 443, 444, 426, 427, 428, *(note a,)* 429. *Maryland Insurance Company vs. Ruden*, 6 *Cranch*, 338. *Overseers of the Poor, &c. vs. Overseers of the Poor, &c.* 10 *Johns. Rep.* 229. 1 *Bac. Ab.* tit. *Agreement;* and 2 *Phill. Evid.* 45.

3. On the *third point*—1 *Bac. Ab.* tit. *Agreement*, (C,) 115. *Botting vs. Martin*, 1 *Campb.* 318. *Hoby vs. Roebuck*, 2 *Serg. & Low.* 57. *Hawkins vs. Holmes*, 1 *P. Wms.* 770. 1 *Chitty's Plead.* 142, 334, 342. 2 *Phill. Evid.* 63, 64, 65, 82, 83, *(note a;)* and *O'Herliky vs. Hedges*, 1 *Sch. & Lef.* 123, 130.

*Moale* and *Mayer*, for the Appellee. 1. On the *first* and *third* bills of exceptions they cited 1 *Phill. Evid.* 43, 54. *Ilderton vs. Atkinson*, 7 *T. R.* 476. *York vs. Blott*, 5 *Maule & Selw.* 71. *Peaceable vs. Watson*, 4 *Taunt.* 17. *Shuttleworth vs. Stephens*, 1 *Campb.* 407. *Hudson vs. Robinson*, 4 *Maule & Selw.* 475. *Birt vs. Kershaw*, 2 *East*, 458. *Ridley vs. Taylor*, 13 *East*, 175. *Alderman vs. Tirrell*, 8 *Johns. Rep.* 418. *Birt vs. Hood*, 1 *Esp. Rep.* 20. 2 *Com. Cont.* 72, and *Inman vs. Stamp*, 2 *Serg. & Low.* 273.

2. On the *second* bill of exceptions, they cited *Ham. Dig.* 287, pl. 20, 24, 50, 67, 69, 71, 82. *Rich vs. Jackson*, 4 *Bro. Ch. Rep.* 514. *Hare vs. Sherwood*, 1 *Ves.* 243. *Woollam vs. Hearn*, 7 *Ves.* 211. *Wesley vs. Thomas*, 6 *Harr. & Johns.* 24, 25; and 2 *Com. Cont.* 18, 20, 56, 81, 84.

*Curia adv. vult.*

STEPHEN, J. at this term, delivered the opinion of the court. This action was instituted for goods sold and delivered. The plaintiffs proved, by competent testimony, the delivery of the goods as charged in their declaration, and there rested their case. The defendant, in his defence against the action, offered to prove by a certain *John Walsh*, that the plaintiffs, together with the defendant and the witness, and others, associated together to build several houses on *Franklin-street* in the city of *Baltimore;* that the plaintiffs had agreed to furnish the hardware necessary for said houses, and for payment thereof were to have an interest of three-fourths in one of said houses, when finished. The plaintiffs objected to the witness, as being incompetent upon the ground of interest, which objection the court overruled; and the question now to be decided is, whether the opinion of the court below was correct in admitting the testimony of said witness? The principle of law is well settled, that any interest, however small, which a witness has in the event of a cause, is sufficient to render him incompetent, and will exclude him from giving testimony in the case. In 1 *Phillips on Evidence*, 53, the law is laid down to be, that a person who loses or gains the smallest sum by the event of a suit, whatever may be his rank, fortune or character, is as incompetent to give evidence, as one who may be interested to the amount of thousands. If then, *John Walsh* had any interest, however small, in the determination of the cause then before the court, he ought to have been rejected as incompetent. He was called to prove that the plaintiffs, the defendant, himself, and others, were jointly concerned in building certain houses on *Franklin-street* in the city of *Baltimore;* and that the articles for which suit was brought, were, by agreement, to be applied to the building of those houses; and that the plaintiffs contracted to take, as compensation for them, an interest in one of the houses. No man has a right to prove himself a partner with another against his consent, for, in 1 *Phillips on Evidence,* 73, (*note c,*) the rule is stated to be, that the admission of one defendant is not evidence to charge another defendant with the fact of being a partner with him; yet in this case he was called upon by the defendant to prove himself a partner with him; and the rule of law being, that every man may re-

nounce a privilege instituted for his protection, so far as the defendant was concerned, his incompetency to prove that fact was removed by a waiver of the objection on his part; but he was certainly not admissible to prove the plaintiffs likewise partners with himself and the defendant in the building of said houses. The witness was clearly interested in the event of the suit against the defendant; because the hardware, for which the action was brought, being used in building the houses on *Franklin-street,* in which he was jointly concerned, he was liable, not only to contribution in the event of a recovery by the plaintiffs, but he was likewise responsible for his proportion of the costs of that suit. In *Riddle vs. Moss,* 7 *Cranch,* 206, it was decided, that an increase of liability by reason of costs, is sufficient to render a witness incompetent.

The judgment of *Baltimore* county court ought to be reversed on the *first* and *third* bills of exceptions; because the witness, who was permitted to give testimony to the jury, was incompetent, and ought to have been rejected. See also *Starkie on Evidence,* 783.

The opinion of the court, expressed in the *second* bill of exceptions, was correct, and is affirmed; because the agreement made between the witness, *Boehme,* and the defendant, the plaintiffs were not bound by, not being a party to the same; and therefore they should not be permitted to avail themselves of it in their favour.

Archer, J. I concur with the court below in the opinions expressed by them in each of the bills of exceptions; and as I therefore dissent from the opinion of this court on the *first* and *third* bill of exceptions, I beg leave briefly to express my views on each question submitted to this court.

The question in the *first* bill of exceptions is as to the admissibility of *John Walsh* as a witness for the defendant, for the purpose of proving the existence of a limited partnership, (it was so considered in the argument,) *between the plaintiffs, defendant, witness, and others.*

Were the plaintiffs *strangers,* suing the defendant as one of a firm, the defendant would not be permitted to call one of his co-partners for the purpose of proving a partnership, inasmuch as the witness, being liable to a contribution for debt and costs

to the defendant, has an interest in defeating the action. In such a case the verdict against the defendant would be evidence, not of the existence of the partnership, but that being established, it would be evidence of the amount recovered against the defendant, in an action by such defendant against the witness for a contribution. Whether this principle of the law of evidence is applicable to the present case, and excludes this witness, is the question submitted to the court.

It is conceived that the principle of the rule can have no applicability to this case, for it cannot be perceived how, if there were a recovery against the defendant, he could, under the circumstances of this case, sue the witness for a contribution. In such an action, proof of partnership between the defendant and the witness, would be indispensable to a recovery; and if, as is the fact, it should turn out in evidence, that the recovery, upon which the action for contribution is grounded, was had by one partner's suing one of his co-partners, instead of going into equity to compel an account and adjustment, (the only manner in which he could rightfully have proceeded,) it would be impossible for the defendant in such action to succeed against the witness. If a partnership existed between the plaintiffs and defendant, the plaintiffs had no right to sue the defendant at law, and a recovery against him would be wrongful, for which he could seek redress in a court of equity, and where he could be made responsible to the plaintiffs for no greater sum than, as co-partner with the plaintiffs, he was liable according to the terms of the association, and their mutual dealings. But in such a case, could an action for contribution be maintained, it would be giving a sanction to such wrongful proceeding on the part of the plaintiffs, and would be equivalent to saying that one partner might be compelled to pay another co-partner a greater sum than was due him, without having any regard to their contract, or partnership transactions. Be the event of this suit what it may, the situation of the witness remains unchanged. He can be responsible to neither the plaintiffs, nor the defendant, *beyond the terms of the association.* If the plaintiffs fail in their suit, the witness remains, as before, answerable in equity to them. If the plaintiffs succeed, and the defendant, by failing to seek redress in equity, is compelled to pay the sum re-

covered at law, the only thing which he would have a right to demand would be, that he should, in the distribution of the funds of the association, be put in the place and stead of the plaintiffs, who could rightfully only have claimed an interest in one of the houses on *Franklin-street*, in payment for the hardware delivered; so that the interest of the witness, whether personal or relative, is precisely the same, let the issue of the suit at law be what it may.    I therefore conceive he was properly admitted as a witness.

The reason for the introduction of the testimony by the plaintiffs, in the *second* bill of exceptions, it is difficult to apprehend, nor is it distinctly seen why it was considered necessary on the part of the defendant, to resist the testimony proposed in this bill of exceptions to be given.    For from any thing which appears in evidence, this contract between the defendant, *Walsh & Boehme*, be its construction what it may, could have had no bearing on the contract attempted to be set up in this case by the defendant, or upon the one attempted to be established by the plaintiffs, without some other testimony connecting it, in some manner, with the contract in issue before the jury.    But if the contract was properly in evidence in the cause, it was surely proper that it should appear before the court with the same stipulations, and with the same character impressed upon it, and that the same interpretation should be given to it, although introduced in evidence, which it would have or receive were an action depending upon it by one of the contracting parties against the other.    By its terms the contracting parties had fixed *no definite time* for the completion of the buildings on *Franklin-street*.    It may therefore be considered that the defendant and *Walsh*, by a just construction of the agreement, had a reasonable time allowed them for that purpose.    To permit a verbal agreement, entered into at the time of making the contract, to be set up, by which a *specified time* should be allowed for finishing the houses, would be to admit evidence to vary the contract.

This case may be assimilated to the case of a promissory note, where no time is fixed for payment; and where it has been decided, that evidence would be inadmissible to shew that it was not intended to be paid immediately.    Evidence of an agree-

ment to enlarge the time for the delivery of goods sold, has been admitted, on the ground that it was only a continuance of the original contract; but in all these cases, the agreement for the substitution of other days, instead of those originally speci-. fied for its performance, were always made subsequent, not at the time of entering into the stipulation. I therefore concur with the court below on the *second* bill of exceptions.

From the testimony detailed in the *third* bill of exceptions, it appears that a special contract was entered into between the plaintiffs and the defendant, whereby the plaintiffs were to receive, in consideration of their delivery of a quantity of hardware, three-fourths of a dwelling-house to be erected on *Franklin-street* in the city of *Baltimore.* Some change in the determination of the defendant, as to the number of houses which he had calculated to build, was made and announced to one of the plaintiffs, who made no objection, and the plaintiffs afterwards continued to furnish more of the goods they had agreed to deliver, and *this action, it is admitted, is brought to reco- ver the hardware delivered under the contract.* The same quantity of hardware was agreed to be taken as if no alteration had been made in the determination of the defendant. It appears, therefore, to be an alteration in no wise affecting the plaintiffs, or touching the contract between the parties. The rule relative to a party's right to abandon the special agreement, and resort to the implied contract, is this, that if the special agreement has been put an end to by the defendant, or the performance of it on the part of the plaintiff prevented by some act of the defendant, there the plaintiff may recover under the common counts whatever may be due to him. But if the special agreement still continue in force and unrescinded, the plaintiff's remedy must be on the special contract, and he cannot abandon it, and recur to the implied contract. Now the special agreement has neither been put an end to, nor its performance prevented by the defendant. The plaintiffs surely cannot be permitted to recover, in this action, the value of the hardware delivered, and thereby waive their contract with the defendant. They agree to take, in satisfaction of their goods, part of a dwelling-house, and can only have their remedy for a specific performance of the contract, or by an action on the special con-

tract, in which they should recover damages for the failure of the defendant to execute it.

If this were an agreement within the statute of frauds, as seems to have been conceded in the argument, it was nevertheless one, the performance of which could have been enforced against the defendant, because the plaintiffs had furnished the hardware in pursuance of it, with which the defendant had erected various buildings. It has been performed on the part of the plaintiffs, and it would be impossible to restore them to their former situation; therefore, if it were allowable for the defendant to take advantage of the statute, it would enable him to perpetrate a gross fraud on the plaintiffs. Performance on the one side, under such circumstances, has always been considered as taking a case without the provisions of the statute. But if it were a case not excepted by judicial decisions from the operation of the statute of frauds, still it would have been incumbent on the plaintiffs to have satisfied the court, that the defendant refused to perform the contract, or that he had taken advantage of the statute, before they could be entitled to sue on the general counts. I concur with the court below in the *third* bill of exceptions, and think their judgment ought to be affirmed.

**JUDGMENT REVERSED, AND PROCEDENDO AWARDED.**